Hector MONTERO–MARTINEZ;
Gregorio Pedro Montero–
Hernandez, Petitioners,

v.

John ASHCROFT,* Attorney General
of the United States,
Respondent.

No. 99–70596.

United States Court of Appeals,
Ninth Circuit.

Submitted ** Jan. 31, 2001

Filed May 23, 2001

As Amended May 30, 2001.

---

* John Ashcroft is substituted for his predecessor, Janet Reno, as Attorney General of the United States. Fed. R.App. P. 43(c)(2). The Attorney General of the United States, rather than the Immigration and Naturalization Service, is the proper respondent in a petition for review of an order of removal. *See* 8 U.S.C. § 1252(b)(3)(A).

** The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. 34(a)(2).

Nicholas Marchi, Carney & Marchi, P.S., Seattle, Washington, for the Petitioners.

David W. Ogden, Acting Assistant Attorney General, Karen Fletcher Torstenson, Assistant Director, and Robbin K. Blaya, Office of Immigration Litigation, Washington, D.C., for the Respondent.

Linton Joaquin, National Immigration Law Center, Los Angeles, California, and Marc Van Der Hout, Van Der Hout & Brigagliano, San Francisco, California, for the Amici Curiae.

Before: PREGERSON, SILVERMAN, and TALLMAN, Circuit Judges.

TALLMAN, Circuit Judge:

Gregorio Pedro Montero–Hernandez and Hector Montero–Martinez (Petitioners) seek review of a final order of removal issued by the Board of Immigration Appeals (BIA). The BIA determined that Petitioners were statutorily ineligible for cancellation of removal as non-permanent residents under 8 U.S.C. § 1229b(b)(1) because neither had a qualifying relative for the purposes of § 1229b(b)(1)(D). We dismiss the petition for lack of jurisdiction.

## I.  FACTS AND PRIOR PROCEEDINGS.

Montero–Hernandez and Montero–Martinez are father and son. They are natives and citizens of Mexico who entered the United States in 1986.

In April 1997, the Immigration and Naturalization Service (INS) served upon Petitioners a Notice to Appear, alleging that Petitioners were removable under 8 U.S.C. § 1182(a)(6)(A)(i) because they had entered the United States without inspection. Petitioners admitted the allegations contained in the Notice and conceded removability. As they had no other viable options for remaining in the United States, they applied for cancellation of removal pursuant to § 1229b(b)(1).

Petitioners appeared before an Immigration Judge (IJ) in April 1998. At the hearing, they both conceded that they did not have a qualifying relative under § 1229b(b)(1)(D). Although Montero–Hernandez had an adult daughter who was a lawful permanent resident, he acknowledged that she was too old to qualify as a child under the INS regulations.

The IJ found Petitioners statutorily ineligible for cancellation of removal and allowed them to voluntarily depart within 60 days. Petitioners appealed to the BIA arguing that they were entitled to cancellation of removal. The BIA found them statutorily ineligible on the same grounds as did the IJ—because neither had a qualifying relative for the purposes of § 1229b(b)(1)(D).

Petitioners now ask this Court to review the BIA's decision. They argue in their petition that the BIA and IJ erred in concluding that Montero–Hernandez's adult daughter is not a "child" for the purposes of § 1229b(b)(1)(D) and that the BIA denied them procedural due process

by "fail[ing] to evaluate the Petitioners [sic] claim for relief."

## II. JURISDICTION.

### A. Judicial Review Under IIRIRA.

We have no jurisdiction to review "any judgment regarding the granting of relief under section ...1229b...." 8 U.S.C. § 1252(a)(2)(B)(i). We therefore do not have jurisdiction to review the petition in this case if we find that the decision that an alien is not statutorily eligible for relief under § 1229b is a "judgment" within the meaning of § 1252(a)(2)(B)(i).

We initially note that § 1252(a)(2)(B)(i), by its plain terms, appears to encompass all decisions regarding cancellation of removal, including determinations of statutory eligibility. Petitioners and Amici,[1] however, urge us to interpret the term "judgment" to encompass only the discretionary decision by the Attorney General to grant or deny cancellation of removal, and not to include determinations of statutory eligibility. According to their interpretation, we would have jurisdiction to determine whether an adult daughter can qualify as a "child" under § 1229b(b)(1)(D) because such a determination is not a discretionary decision but a "pure question of law."

■ We decline to adopt their narrow interpretation. We believe for two rea-

sons that the term "judgment" as it is used in § 1252(a)(2)(B)(i) encompasses a broader range of decisions than merely discretionary decisions. First, when Congress passed the Illegal Immigration Reform and Immigration Responsibility Act of 1996 (IIRIRA), which included the jurisdiction stripping provisions of § 1252, it simultaneously passed transitional rules to govern cases in which final orders of deportation or exclusion were entered between October 30, 1996, and March 31, 1997. *See* IIRIRA, Pub.L. No. 104–208, § 309(a), 110 Stat. 3009, 3009–625 (1996); *Kalaw v. INS*, 133 F.3d 1147, 1150 (9th Cir.1997). The permanent rules, including § 1252, were to govern removal proceedings initiated by the INS on or after April 1, 1997. *Id.* Among the transitional rules was IIRIRA § 309(c)(4)(E), the predecessor to the permanent jurisdiction stripping provision of § 1252(a)(2)(B)(i). Section 309(c)(4)(E) provided that "there shall be no appeal of any *discretionary decision*" under, inter alia, the predecessor to § 1229b.

Had Congress intended to preclude review only of discretionary decisions under § 1252(a)(2)(B)(i), it would have used the same language, "discretionary decision," as it used in the transitional rules. But it did not. Rather, it broadened the language to preclude review of "*any judgment* regarding the granting of relief...."[2] Our broad

---

1. We permitted the National Immigration Law Center and the National Immigration Project of the National Lawyers Guild to file a Brief *Amicus Curiae* in this case.

2. The dissent argues that the term "judgment" is only used in the INA to refer either to formal decisions by a court or to discretionary decisions. Dissent at 6501–2 n. 9. The term, as it is used in § 1252(a)(2)(B)(i), does not refer to a formal decision of a court, the dissent argues; therefore, it must refer to a discretionary decision because we presume, pursuant to a canon of statutory interpretation, that "where Congress uses the same word or phrase throughout a statute, Con-

gress generally intends the word or phrase to have the same meaning each time Congress uses it." Dissent at 6502. Although this argument does have some force, on closer scrutiny it fails.

All of the portions of the INA cited by the dissent that use "judgment" as a discretionary decision clearly indicate that "judgment" means "discretionary decision," whereas § 1252(a)(2)(B)(i) does not. See Dissent at 6501–2 n. 9. In those provisions, either the term "discretionary" precedes the term "judgment" or the term "judgment" directly refers to the judgment of an individual, indicating that the "judgment" is a discretionary

interpretation comports with the interpretation of § 1252(a)(2)(B)(i) adopted by the First Circuit, which stated, in dicta:

> The INS correctly points out that the prohibition in [§ 1252(a)(2)(B)(i) ], the permanent rule, is broader than the prohibition in IIRIRA § 309(c)(4)(E), the transitional rule. [Section 1252(a)(2)(b)(i) ] bars review of 'any judgment regarding the granting of relief' under enumerated sections of the INA, while IIRIRA § 309(c)(4)(E) precludes judicial review of 'discretionary decisions under' enumerated sections of the INA. Thus, *the permanent rules remove more than 'discretionary decisions' from review in the courts of appeals.*

*Prado v. Reno,* 198 F.3d 286, 290 (1st Cir.1999) (holding, nonetheless, that § 1252(a)(2)(B)(i) did not preclude review of the BIA's dismissal of an appeal from the denial of a motion to reopen under 8 C.F.R. § 3.2, an INS regulation distinct from the enumerated provisions in § 1252(a)(2)(B)(i)) (emphasis added).

Our second reason for declining to adopt the narrow interpretation of "judgment" offered by Petitioners and Amici is that such an interpretation would render § 1252(a)(2)(B)(i) superfluous in the context of its companion provision, § 1252(a)(2)(B)(ii). While subsection (i) precludes judicial review of "any judgment regarding the granting of relief" under five enumerated provisions of Title 8, subsection (ii) precludes judicial review ·of "any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General, other than the granting of relief under section 1158(a). . . ." Subsection (ii) thus covers any discretionary decision by the Attorney General that is not subsumed by the enumerated provisions in subsection (i) (with the exception of § 1158(a) ("Authority to Apply for Asylum")).

Petitioners and Amici place strong emphasis on the term "other" in subsection (ii), arguing that (i), like (ii), must refer to discretionary decisions or the term "other" would be meaningless. Although this argument has some force, reading subsection (i) the way Petitioners and Amici do would create a far more substantial problem of superfluity—it would render subsection (i) superfluous in the context of subsection (ii). In other words, there would be no need for Congress to enumerate the provisions in subsection (i) if it only applied to discretionary decisions, because the judicial review of those enumerated provisions would then be governed by subsection (ii), which covers the Attorney General's remaining discretionary decisions (with the one exception).

decision by an individual. Section 1252(a)(2)(B)(i), however, does not utilize the term "discretionary" to modify the term "judgment," nor does it refer to the "judgment" of a specified person. *Compare, e.g.,* 8 U.S.C. § 1153(d)(5) (referring to "the use of independent judgment" in defining a supervisor and her duties); 8 U.S.C. § 1537(b)(2)(A) (using the phrase "in the judgment of the Attorney General"), *with* § 1252(a)(2)(B)(i) (precluding judicial review of "any judgment regarding the granting of relief . . ." without reference to a specific individual). Rather, § 1252(a)(2)(B)(i) contains no modifying phrases that would indicate that "judgment" refers exclusively to a discretionary decision. The dissent's use of the canon of statutory interpretation that like words in a statute generally mean the same thing throughout the statute is not persuasive where, as here, the word is contextually different in the statutory section being interpreted from the other statutory sections.

We hold that § 1252(a)(2)(B)(i) precludes judicial review of the statutory eligibility for cancellation of removal in addition to the discretionary decision of whether to grant cancellation of removal under § 1229b. We do not have jurisdiction to review Petitioners' claim that an adult daughter can qualify as a "child" under § 1229b(b)(1)(D).

### B. Hypothetical Jurisdiction.

▆▆▆ In the absence of jurisdiction under IIRIRA, Petitioners ask us to exercise hypothetical jurisdiction over the merits of their case. The doctrine of hypothetical jurisdiction is not a permissible basis upon which to exercise jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

### C. Habeas Corpus Jurisdiction.

Amici urge us, in the absence of subject matter jurisdiction under IIRIRA, to hold that Petitioners still have the avenue of habeas corpus review open to them. They argue that Petitioners must have a forum to present their procedural due process claim. Because this is not a petition for habeas corpus review, however, the issue of habeas corpus jurisdiction is not properly before us. Accordingly, we do not decide at this time whether that avenue is available to Petitioners.

### III. CONCLUSION.

Section 1252(a)(2)(B)(i) precludes judicial review of Petitioners' claims. We therefore dismiss the petition for lack of jurisdiction.

**DISMISSED.**

---

1. Congress also uses the word "judgment" when it refers to a "judgment of conviction."

---

PREGERSON, J., dissenting in part, concurring in the result:

### I.

Congress might have written INA § 242(a)(2)(B)(i), 8 U.S.C. § 1252(a)(2)(B)(i) to state: "There shall be no appeal from the denial of INA §§ 212(h) and (i) waivers, cancellation of removal, voluntary departure, or adjustment of status." But that's not what the statute says. Instead, § 242(a)(2)(B)(i) eliminates our jurisdiction over "judgment[s] regarding the granting of [the enumerated forms of] relief." Why did Congress use the word "judgment" in this provision? It turns out that Congress uses the word "determination" or "decision" in almost every single other jurisdiction-limiting provision in the Immigration and Naturalization Act ("INA"), and § 242(a)(2)(B)(i) is the *only* jurisdiction-limiting provision that uses the word "judgment." What accounts for this difference in wording?

It also turns out that Congress *only* uses the word "judgment" throughout the INA to refer to the exercise of discretion or discretionary decisions.[1] Doesn't this suggest that the word "judgment" in § 242(a)(2)(B)(i) also refers to discretionary decisions? If Congress really wanted to limit all appeals from denials of certain forms of discretionary relief, why didn't it just write § 242(a)(2)(B)(i) unambiguously to say so? Other provisions of the INA demonstrate that Congress knows how to

*See infra* note 9 and accompanying text.

write an airtight jurisdiction-stripping provision if it wants to.

The majority does not provide a satisfactory answer to any of these questions in concluding that § 242(a)(2)(B)(i) eliminates our jurisdiction over *all* determinations by the Board of Immigration Appeals ("BIA")[2] regarding the enumerated forms of discretionary relief. The petitioner and amicus curiae present a strong case that Congress used the word "judgment" in § 242(a)(2)(B)(i) because it intended to eliminate jurisdiction only over *discretionary determinations* by the BIA regarding the enumerated forms of discretionary relief. Our court meanwhile retains jurisdiction to review non-discretionary, legal issues involved in determining whether an alien is entitled to the enumerated forms of discretionary relief. The arguments supporting this position are presented in detail later in this dissent. But before turning to the somewhat laborious task of statutory interpretation, I want to provide some examples to demonstrate why this difference in interpretation is important.

In *Guadalupe–Cruz v. INS*, 240 F.3d 1209 (9th Cir.2001), an Immigration Judge ("IJ") applied a stop-clock rule set forth in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") to the petitioners' suspension of deportation applications even though IIRIRA had not yet gone into effect.[3] *Id.* at 1210. Applying the stop-clock rule meant that the petitioners could not show seven years of continuous physical presence, which is required for suspension of deportation eligibility. *Id.* at 1211. If the IJ had not applied the stop-clock rule, the petitioners would have met the continuous physical presence requirement. *Id.* We granted the petition for review on the ground that the IJ erred in prematurely applying the stop-clock rule to the petitioners' applications.[4] *Id.* In so doing, we noted that the IJ prematurely applied the stop-clock rule in the face of clear Ninth Circuit precedent holding that IIRIRA's new stop-clock rule could not be applied before IIRIRA's effective date, April 1, 1997. *Id.* (citing *Astrero v. INS*, 104 F.3d 264, 266 (9th Cir. 1996)).

Under the majority's interpretation of § 242(a)(2)(B)(i), this court no longer has jurisdiction to correct glaring misapplica-

---

**2.** Technically speaking, this appeal raises the question whether we can review decisions regarding discretionary relief by the Attorney General and his designees, which includes, *inter alia*, Immigration Judges ("IJ"), the BIA, INS District Directors, and INS Regional Commissioners. Practically speaking, however, appellate courts usually review decisions by the BIA, so this dissent uses "BIA" as a shorthand for the Attorney General and his designees.

**3.** Suspension of deportation was the form of discretionary relief replaced by cancellation of removal. In order to be eligible for suspension of deportation, an alien had to show, *inter alia*, that he or she was continually physically present in the United States for at least seven years. *See Guadalupe–Cruz*, 240 F.3d

at 1210 n. 2. Before IIRIRA's stop-clock rule went into effect, an alien could accrue time towards this continuous physical presence requirement until the alien applied for suspension of deportation. *Id.* at 1210 n. 3. Under the stop-clock rule, the alien's time stops accruing when the INS initiates removal proceedings. *Id.*

**4.** We had jurisdiction over the petition for review in *Guadalupe–Cruz* because the transitional rules were interpreted only to eliminate our jurisdiction over discretionary determinations by the BIA. *See Kalaw v. INS*, 133 F.3d 1147, 1151 (9th Cir.1997). The transitional rules applied in *Guadalupe–Cruz* because the INS initiated removal proceedings against petitioner before April 1, 1997. *Guadalupe–Cruz*, 240 F.3d at 1210.

tions of the law like the one at stake in *Guadalupe–Cruz.* The IJ's non-discretionary determination that IIRIRA's stop-clock rule applied even though IIRIRA had not yet gone into effect would be, under the majority's interpretation, a "judgment regarding the granting of relief" under the suspension of deportation provision. Under the petitioner's interpretation of § 242(a)(2)(B)(i), however, we would retain jurisdiction over the IJ's misapplication of the law in *Guadalupe–Cruz.*

Take another example. In *Castrejon–Garcia v. INS,* 60 F.3d 1359 (9th Cir.1995), an IJ found that the petitioner had not met the continuous physical presence requirement because he went to Mexico for eight days for the sole purpose of obtaining a visa in order to permit his legal entry into the United States. *Id.* at 1362. The IJ accordingly denied the petitioner's suspension of deportation application, where deportation would have resulted in the petitioner's separation from his wife and newborn baby. This court granted the petition for review, holding that the petitioner's eight-day trip to Mexico did not interrupt his continuous physical presence in the United States, and that the IJ mistakenly interpreted the legal standards that govern continuous physical presence

analysis. *Id.* This court noted that "[t]he Board's interpretation penalizes a good faith effort to comply with the immigration laws of our nation." *Id.* Again, under the majority's interpretation, we no longer have jurisdiction to correct the BIA when it misapplies legal standards in this manner.

The majority's interpretation of § 242(a)(2)(B)(i) affects not only non-discretionary determinations regarding cancellation of removal, but also non-discretionary determinations regarding INA §§ 212(h) and (i) waivers, voluntary departure, and adjustment of status. *See* INA § 242(a)(2)(B)(i), 8 U.S.C. § 1252(a)(2)(B)(i) (enumerating all of these forms of relief). While the decision whether to grant each of these forms of relief is ultimately discretionary, an IJ must first make several eligibility determinations that do not require the IJ to exercise discretion.[5] These eligibility determinations are governed by legal standards, and often require an IJ or the BIA to engage in statutory interpretation. The majority casually surrenders our jurisdiction over these purely legal issues that arise when an IJ or the BIA make eligibility determinations—even though the statute does not clearly divest our jurisdiction.

---

**5.** For example, in order to be eligible for voluntary departure, an alien must show, *inter alia,* that he or she: (1) has been physically present in the United States for at least one year before being served with a notice to appear; (2) is of good moral character; (3) is not deportable under certain enumerated sections of the INA; and (4) has an intention to leave the United States. *See* INA § 240B(b), 8 U.S.C. § 1229c(b). Only the "good moral character" requirement calls for the IJ to exercise discretion, and even a good moral character determination can be non-discretionary because the INA lists categories of individuals who are per se ineligible for a good moral character determination. *See* INA § 101(f), 8 U.S.C. § 1101(f) (listing, *inter alia,* "habitual drunkards," practicing polygamists, prostitutes, and smugglers as per se

ineligible categories); *Kalaw,* 133 F.3d at 1151 (determination whether an alien falls into per se category is a non-discretionary determination).

Under the majority's opinion, if an IJ or the BIA denies an alien voluntary departure because of a misapplication of the statute, the alien is essentially without a remedy. There is always the possibility that the alien can bring a habeas petition to challenge the denial of discretionary relief. *See Flores–Miramontes v. INS,* 212 F.3d 1133, 1136–37 (9th Cir.2000) (holding that INA § 242(a)(2)(C) does not strip courts of jurisdiction to hear habeas petitions of criminal aliens in challenging their removal orders) (citations omitted). As the majority notes, however, this issue is not raised by the petitioners in this case.

Appellate courts should guard every scrap of jurisdiction not clearly divested by Congress, particularly in immigration law, where the consequence of a mistake below is deportation.[6] *See* Lenni B. Benson, *The New World of Judicial Review of Removal Orders*, 12 Geo. Immigr. L.J. 233, 233 (1998) ("The ability of Congress to insulate administrative decisions from federal court review is ... particularly disturbing in the context of the removal of noncitizens because of the impact on the individual's life."). The majority's position that the word "judgment" *clearly* encompasses both discretionary and non-discretionary decisions is implausible given the strength of the arguments presented by the petitioners and the amicus curiae (as set forth herein). Without comment, the majority disregards well-settled canons of statutory interpretation that require us to resolve close questions in favor of the alien, not the INS, and to interpret statutes in favor of preserving, not eliminating, jurisdiction. Because I believe that we are required to interpret § 242(a)(2)(B)(i) to preserve jurisdiction over legal issues, I respectfully dissent.

## II.

The underlying discretionary relief sought by the petitioners in this case is cancellation of removal.[7] Because the petitioners are non-permanent residents, they must meet the eligibility requirements for cancellation of removal set forth in INA § 240A(b), 8 U.S.C. § 1229b(b).[8] This section permits an IJ to cancel removal if an alien: (1) has resided in the United States continuously for at least 10 years; (2) is of good moral character; (3) has not been convicted of enumerated criminal offenses; and (4) can establish that removal would result in "exceptional and extremely unusual hardship" to the alien's spouse, parent, or child who is a U.S. citizen or a legal permanent resident.

The discrete question on appeal is whether the petitioner's adult daughter qualifies as a "child" for purposes of establishing the hardship requirement. This question would require us to review the BIA's construction of the Immigration and Naturalization Act ("INA"), which is a pure question of law. This question would not require us to review a discretionary determination by the BIA. According to the majority, § 242(a)(2)(B)(i) removes our jurisdiction to review this purely legal issue of statutory interpretation. Section 242(a)(2)(B) states in full:

Notwithstanding any other provision of law, no court shall have jurisdiction to review—

---

6. Another reason we should be especially vigilant in construing narrowly jurisdiction-limiting provisions in the immigration context is because immigrants "have no vote, and are [a] historically unpopular group[ ]." David Cole, *Jurisdiction and Liberty: Habeas Corpus and Due Process as Limits on Congress's Control of Federal Jurisdiction*, 86 Geo. L.J. 2481, 2482 (1998). Thus, "Congress [has] selectively targeted the most vulnerable among us for denial of federal court protection.... One of the federal courts' most important functions is to protect those who cannot rely on the political process for protection." *Id.*

7. Cancellation of removal is a new form of discretionary relief passed as part of IIRIRA,

which was enacted on September 30, 1996. *See* Pub.L. No. 104–208 (Division C), 110 Stat. 3009–546. In IIRIRA § 304, Congress eliminated INA § 212(c) relief as well as suspension of deportation, and instead provided for two forms of cancellation of removal, one for aliens who are legal permanent residents, and one for those who are not.

8. The statutory requirements for cancellation of removal differ depending on whether the alien is a permanent resident or a non-permanent resident. The former, less stringent, requirements, are codified at INA § 240A(a), 8 U.S.C. § 1229b(a), while the latter requirements are codified at INA 240A(b), 8 U.S.C. § 1229b(b).

(i) any judgment regarding the granting of relief under section 212(h) [8 U.S.C. § 1182(h)], 212(i) [8 U.S.C. § 1182(i)], 240A [8 U.S.C. § 1229b], 240B [8 U.S.C. § 1229c], or 245 [8 U.S.C. § 1255], or

(ii) any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General, other than the granting of relief under section 208(a) [8 U.S.C. § 1158(a)][the provision permitting the Attorney General to grant asylum].

I believe that under this jurisdiction-limiting provision, we retain jurisdiction to review the issue presented by the petition for review, because the BIA's construction of the INA is *not* a "judgment regarding the granting of relief."

## III.

I take as my starting point the canons of statutory interpretation that are specifically applicable in the immigration context. First, as the Supreme Court recently reaffirmed, we should construe narrowly restrictions on jurisdiction. *See Reno v. American–Arab Anti–Discrimination Committee,* 525 U.S. 471, 482–83, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) (finding the scope of the jurisdictional bar in INA § 242(g), 8 U.S.C. § 1252(g), to be "much narrower" than the parties assumed, and to be limited to review of the "three discrete actions" listed in the statute); *McNary v. Haitian Refugee Center, Inc.,* 498 U.S. 479, 496, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991) (noting the "well-set-tled presumption favoring interpretations of statutes that allow judicial review of administrative action"). And second, ambiguities in the law are interpreted in favor of the alien. *INS v. Cardoza–Fonseca,* 480 U.S. 421, 449, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (citing the "longstanding principle of construing ... ambiguities in deportation statutes in favor of the alien").

With these principles in mind, I turn to the language of § 242(a)(2)(B)(i). The majority asserts that this provision, "by its plain terms, appears to encompass all decisions regarding cancellation of removal, including determinations of statutory eligibility." It is well established that if the "language at issue has a plain and unambiguous meaning .... [o]ur inquiry must cease...." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (quoting *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 240, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)). But "judgment" as used in § 242(a)(2)(B)(i) does not have a "plain and unambiguous" meaning, because the statute does not define the term, and "judgment" could *either* mean "any decision" or "any decision involving the exercise of discretion."

My observation that the meaning of the word "judgment" is ambiguous is based on a careful study of the entire INA, which is codified at Title 8 of the U.S.Code. This study is revealing: when the word "judgment" is not being used in the INA to refer to a formal order given by a court (i.e., a "judgment of conviction"), it is *only* used to refer to the exercise of discretion, or to a discretionary determination.[9] This

---

9. Aside from the use of "judgment" currently at issue, the word "judgment" appears thirteen times in the Immigration and Naturalization Act ("INA"), which is codified in Title 8 of the U.S.Code. Of these thirteen appearances, "judgment" is used eight times to refer to a formal decision given by a court. *See, e.g.,* 8 U.S.C. § 1101(a)(48)(A) ("The term 'conviction' means, with respect to an alien, a formal *judgment* of guilt of the alien entered by a court...."); 8 U.S.C. § 1158(b)(2)(A)(ii) ("[T]he alien, having been convicted by a final *judgment* of a particularly serious crime, constitutes a danger to the community of the United States...."); 8 U.S.C. § 1227(a)(2)(D)

suggests that Congress similarly intended the word "judgment" in INA § 242(a)(2)(B)(i) to refer only to discretionary determinations. Indeed, it is a well-established canon of statutory interpretation that where Congress uses the same word or phrase throughout a statute, Congress generally intends the word or phrase to have the same meaning each time Congress uses it. *Weaver v. United States Information Agency*, 87 F.3d 1429, 1437 (D.C.Cir.1996) (citing *Atlantic Cleaners & Dyers v. United States*, 286 U.S. 427, 433, 52 S.Ct. 607, 76 L.Ed. 1204, (1932)) ("Normally, the same word appearing in different portions of a single provision or act is taken to have the same meaning in each appearance."). The majority ignores this canon of statutory interpretation.

The structure of § 242(a)(2)(B) also supports interpreting "judgment" to refer only to discretionary determinations. Subsection (i) of § 242(a)(2)(B) states that courts cannot review certain "judgments" made by the Attorney General; subsection (ii) of § 242(a)(2)(B) states that courts also cannot review "any *other* decision[s]" that are within the discretion of the Attorney General. Read together, it seems clear that the "judgments" referred to in subsection (i) must also be decisions that are within the discretion of the Attorney General. If "judgment" in subsection (i) is interpreted to encompass all decisions, discretionary and non-discretionary, then the word "other" in subsection (ii) becomes superfluous.

The majority responds that interpreting "judgment" in subsection (i) to refer only to discretionary decisions renders subsection (i) superfluous, stating "there would be no need for Congress to enumerate the provisions in subsection (i) if it only applied to discretionary decisions, because the judicial review of those enumerated provisions would then be governed by subsection (ii), which covers the Attorney General's remaining discretionary decisions (with one exception)." I take this argument to mean that if Congress wanted to eliminate review only of discretionary decisions, it would have written § 242(a)(2)(B) with one provision stating simply that courts cannot review any decisions that are within the discretion of the Attorney General. Instead, Congress singled out five forms of discretionary relief in the first subsection, and lumped the remaining

("Any alien who at any time has been convicted (the *judgment* on such conviction becoming final)....").

In the five remaining appearances (not including the one at stake in this appeal), "judgment" only refers to the exercise of discretion, or to a discretionary determination. *See* 8 U.S.C. § 1103(a)(7) ("[The Attorney General] may, with the concurrence of the Secretary of State, establish offices of the Service in foreign countries; and, after consultation with the Secretary of State, he may, whenever in his *judgment* such action may be necessary to accomplish the purposes of this chapter, detail employees of the Service for duty in foreign countries."); 8 U.S.C. § 1153(d)(5) ("Supervisor.—The term, "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or re-

sponsibility to direct them, or to adjust their grievances, or effectively recommend such action, if in connection with the foregoing the exercise of such authority is not merely of a routine or clerical nature, but requires the use of independent *judgment*.") 8 U.S.C. § 1226(e) ("The Attorney General's discretionary *judgment* regarding the application of this section shall not be subject to review."); 8 U.S.C. § 1252(b)(4)(D) ("The Attorney General's discretionary *judgment* whether to grant relief under section 1158(a) of this title shall be conclusive unless manifestly contrary to the law and an abuse of discretion."); 8 U.S.C. § 1537(b)(2)(A) ("The removal of an alien shall be to any country which the alien shall designate if such designation does not, in the *judgment* of the Attorney General ... impair the obligation of the United States under any treaty....").

forms of discretionary relief in the second subsection. The majority suggests that Congress established these two groups because it intended to create a bifurcated system of judicial review: courts may not review *any* decisions—discretionary or nondiscretionary—involving the five forms of relief enumerated in subsection (i), but under subsection (ii), courts *may* review non-discretionary decisions involving the remaining, unenumerated forms of relief.

To make this purported distinction more concrete, here is an example of how the majority's interpretation of § 242(a)(2)(B) would work: an alien who is not a legal permanent resident is under a final order of removal, but seeks two forms of relief from removal, cancellation of removal under INA § 240A(b) and a waiver of removal under INA § 237(a)(1)(H), 8 U.S.C. § 1227(a)(1)(H).[10] To be eligible for cancellation of removal, the alien must show, *inter alia,* that his removal would result in hardship to a spouse, parent, or child who is a citizen or a legal permanent resident. To be eligible for a § 237(a)(1)(H) waiver, the alien must show, *inter alia,* that he is the spouse, parent, son, or daughter of a citizen or legal permanent resident.

Assume, for purposes of this example, that the alien seeking these two forms of discretionary relief has a parent who is a legal permanent resident. The IJ, however, mistakenly believes that in order to obtain cancellation of removal or a § 237(a)(1)(H) waiver, the alien must show that his parent is a citizen, and not simply a legal permanent resident. The IJ states in her decision that the alien has met every other discretionary and non-discretionary statutory requirement for both cancellation of removal and for a

§ 237(a)(1)(H) waiver, and that she would, in her discretion, grant the alien both forms of relief if his parent were a citizen.

The alien petitions for review of his final order of removal in the court of appeals. In his petition, the alien asserts that the IJ erred in denying him cancellation of removal and a § 237(a)(1)(H) waiver because the eligibility requirements for each form of relief state that the alien's parent can be either a citizen or a legal permanent resident. This challenge raises a purely legal question of statutory interpretation, and would not require a court to review a discretionary decision by the BIA.

Our review of the challenge in the § 237(a)(1)(H) context would be governed by subsection (ii), because a § 237(a)(1)(H) waiver is not a form of relief enumerated in subsection (i). Subsection (ii) only prohibits review of decisions within the Attorney General's discretion, so we would have jurisdiction to consider the alien's challenge to the BIA's denial of a § 237(a)(1)(H) waiver. Under the majority's interpretation, however, we would *not* have jurisdiction to review the exact same challenge to the BIA's denial of cancellation of removal. Cancellation of removal, unlike a § 237(a)(1)(H) waiver, is one of the enumerated forms of relief in subsection (i). Because the majority believes that the jurisdictional bar in subsection (i) is broader than the jurisdictional bar in subsection (ii), and encompasses non-discretionary decisions, we would not have jurisdiction to consider the alien's argument in the context of the BIA's denial of cancellation of removal.

I find this interpretation unconvincing. I do not believe that Congress intended to

---

**10.** INA § 237(a)(1)(H) authorizes the waiver of removal for individuals who are inadmissible under INA § 212(a)(6)(C)(i) because they fraudulently procured a visa or other documentation. Like cancellation of removal, a decision whether to grant § 237(a)(1)(H) relief is ultimately discretionary, but in order to be eligible, a petitioner must meet certain, non-discretionary statutory requirements.

create such a complex, bifurcated system of judicial review for discretionary relief. But the question still remains: if Congress wanted to eliminate review over only discretionary decisions by the BIA, why did it divide § 242(a)(2)(B) into two subsections? Unfortunately, neither the statutory language nor the legislative history [11] helps us answer this question. Thus, like the majority, I am unsure why Congress created two subsections in § 242(a)(2)(B). I can, however, think of an alternative explanation for the presence of § 242(a)(2)(B)(ii) that is at least as convincing as the majority's bifurcated-judicial-review explanation: subsection (ii) might be a catch-all provision, meant to encompass any discretionary decision within the Attorney General's authority that is not described by the specific provisions enumerated in subsection (i).

Subsection (i) lists the most common forms of discretionary relief that the Attorney General may grant: waiver of certain grounds of inadmissibility, cancellation of removal, voluntary departure, and adjustment of status.[12] In my experience, most petitions for review filed with this court that challenge a denial of discretionary relief involve one of the forms of relief enumerated in subsection (i). But there are certainly other, less frequently used forms of discretionary relief, including § 212(g) waivers [13] and § 237(a)(1)(H) waivers.[14] I suppose that Congress could have tried to enumerate all forms of discretionary relief in one provision, but the INA is complex, and so perhaps Congress chose instead simply to write a catch-all provision, meant to encompass all obscure forms of discretionary relief.

So, if one interprets "judgment" in subsection (i) to encompass only non-discretionary decisions by the BIA, subsection (ii) is not superfluous if it is a catch-all provision for obscure forms of discretionary relief that are not enumerated in subsection (i). In contrast, the majority's interpretation still renders the word "other" in subsection (ii) superfluous. While the "catch-all" explanation may not be the most convincing explanation for the presence of § 242(a)(2)(B)(ii), 242(a)(2)(B)(ii), I think that it is as plausible, if not more so, than the majority's suggestion that § 242(a)(2)(B) creates a bifurcated system of judicial review depending on whether the form of relief in question is common or obscure.

## IV.

A better argument supporting the majority's position is that the jurisdiction-stripping language of the permanent rule is broader than the jurisdiction-stripping

---

11. *See infra* for a discussion of the legislative history behind § 242(a)(2)(B).

12. The only common form of discretionary relief *not* listed in subsection (i) is asylum, but asylum is altogether excepted in § 242(a)(2)(B)(ii) from the jurisdictional bar. Withholding of removal is also not listed in subsection (i), but withholding is a mandatory, not discretionary, form of relief. *See Al-Harbi v. INS*, 242 F.3d 882, 888 (9th Cir. 2001) ("Unlike asylum, withholding of removal is not discretionary.") (citation omitted); *Kataria v. INS*, 232 F.3d 1107, 1115 (9th Cir.2000) (petitioner who demonstrated clear probability of future persecution entitled to withholding of removal, but discretionary decision whether to grant asylum remanded to BIA). Because withholding of removal is not a discretionary form of relief, it does not fall within the jurisdictional bar in § 242(a)(2)(B)(ii).

13. INA § 212(g) permits the Attorney General to waive excludability in certain circumstances of a person who has a disease of public health significance or fails to obtain vaccination or has a physical or mental disorder under INA § 212(a)(1)(A)(i), (ii), or (iii).

14. *See supra* note 10 (explaining § 237(a)(1)(H) waivers).

language of the transitional rule, implying that Congress intended the permanent rule to preclude more judicial review than the transitional rule. The relevant transitional rule, IIRIRA § 309(c)(4)(E), provides that "there shall be no appeal of any discretionary decision under [various INA sections setting forth eligibility requirements for discretionary relief]." Our court has interpreted this transitional · rule to permit judicial review of any facet of the BIA's decision that does not require the exercise of discretion. *Kalaw v. INS*, 133 F.3d 1147, 1151 (9th Cir.1997). Judicial review is only foreclosed as to decisions that can be classified as discretionary. *Id.*

The majority's holding that § 242(a)(2)(B)(i) eliminates our jurisdiction over all judgments regarding the enumerated forms of discretionary relief hinges on the import it assigns to the difference in wording between the transitional rule and the permanent rule. The permanent rule substitutes the phrase "any judgment" for the phrase "any discretionary decision" in the transitional rule. The majority assumes that we can infer from this difference in wording Congress' intent to broaden the bar on judicial review. But a protracted study of the legislative history does not reveal the rationale for the difference in wording. Perhaps Congress thought that the word "judgment" was a synonym for "discretionary decision."

I do not reach this conclusion through mere conjecture. Rather, a thorough review of the INA reveals that if Congress really wanted to eliminate judicial review over all determinations made by the BIA, discretionary and nondiscretionary, it certainly knew how to write a statute unambiguously to accomplish that purpose. INA § 240B(f), 8 U.S.C. § 1229c(f), for example, states, "No court shall have jurisdiction over an appeal from denial of a request for an order of voluntary departure under subsection (b) [which permits

an IJ to grant voluntary departure at the conclusion of removal proceedings]." Congress similarly could have stated that "No court shall have jurisdiction over an appeal from denial of a request for a waiver under INA §§ 212(h) or (i), cancellation of removal, voluntary departure, or an adjustment of status."

Moreover, INA § 242(a)(2)(A)(i), 8 U.S.C. § 1252(a)(2)(A)(i), states, "[N]o court shall have jurisdiction to review ... *any individual determination* or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 235(b)(1) [8 U.S.C. § 1225(b)(1) ]." (emphasis added). If Congress wanted to eliminate judicial review over *all* decisions by the BIA regarding discretionary relief, surely it would have employed the same language in § 242(a)(2)(B) that it employed in this provision, § 242(a)(2)(A), which directly precedes § 242(a)(2)(B) in the statutory code. Congress could have written § 242(a)(2)(B)(i) to read: "[N]o court shall have jurisdiction to review *any individual determination* regarding the granting of relief under [various provisions in the INA setting forth eligibility requirements for discretionary relief]." But Congress did not use the phrase, "any individual determination." Instead, Congress used the term "judgment."

Provisions limiting judicial review in the asylum context also demonstrate that if Congress wanted to eliminate federal court jurisdiction over all decisions by the BIA, it knew how to do so in an unambiguous manner. INA § 208(a)(3), 8 U.S.C. § 1158(a)(3) states, "No court shall have jurisdiction to review *any determination* of the Attorney General under paragraph (2)." (emphasis added). *See also* INA § 208(b)(2)(D), 8 U.S.C. § 1158(b)(2)(D) ("There shall be no judicial review of *a determination* of the Attorney General un-

der subparagraph (A)(v).") (emphasis added). Why would Congress use the word "determination" in all of these other contexts to refer to a decision of the Attorney General, but use the word "judgment" *only* in § 242(a)(2)(B)(i)? This difference is simply further evidence that Congress intended by § 242(a)(2)(B)(i) to remove judicial review of only discretionary decisions by the BIA.

The sparse legislative history describing the scope of § 242(a)(2)(B) is not very helpful. The House Conference Report accompanying IIRIRA described § 242(a)(2)(B) in the following manner:

> This subsection ... bars judicial review (1) of any judgment whether to grant relief under section 212(h) or (i), 240A, 240B, or 245, [and] (2) of any decision or action of the Attorney General which is specified to be in the discretion of the Attorney General (except a discretionary judgment whether to grant asylum as described in section 242(b)).....

H.R. CONF. REP. 104–828, at 485–86 (1996) (emphasis added). This description is unhelpful because it does not specify whether a non-discretionary decision regarding statutory eligibility is a "judgment whether to grant relief." The House Conference Report clarifies § 242(a)(2)(B)(i) only in one respect: the *ultimate* decision whether to grant relief, which is indisputably discretionary, is not subject to judicial review. *See, e.g.,* INA §§ 240A(a), (b), 8 U.S.C. §§ 1229b(a), (b) (providing that Attorney General "may" cancel removal upon a finding that the alien is statutorily eligible for relief); *Kalaw,* 133 F.3d at 1152 (holding that the ultimate decision whether to grant suspension of deportation, the precursor to cancellation of removal, is discretionary, and therefore unreviewable under transitional rules limiting judicial review of "discretionary decisions"). But under either the majority's or this dissent's interpretation of the word "judg-

ment," we would not have jurisdiction over this ultimate decision because it is discretionary.

## V.

To summarize: The meaning of "judgment" in § 242(a)(2)(B)(i) is unclear because the statute does not define the term, and it could mean "any decision" of the BIA, or it could mean "a decision involving the exercise of discretion." The legislative history makes clear that the term encompasses the ultimate discretionary decision whether to grant relief. But neither the legislative history nor the statute makes clear whether "judgment" also refers to non-discretionary determinations about statutory eligibility. We know, however, that in the INA as a whole, Congress *only* uses the word "judgment" to refer to the exercise of discretion or a discretionary determination when it is not being used to refer to a judgment of conviction.

Moreover, when subsection (i) and subsection (ii) of § 242(a)(2)(B) are read together, it seems clear that the "judgments" referred to in subsection (i) are "decisions ... [within] the discretion of the Attorney General." The strongest argument *against* interpreting "judgment" to refer only to discretionary decisions is that the change in language from the transitional rule limiting judicial review to the permanent rule limiting judicial review suggests that the permanent rule has a broader preclusive effect than the transitional rule. But a review of the INA as a whole demonstrates that if Congress really wanted to preclude review of all decisions by the BIA regarding discretionary relief, it knew how to do so in unambiguous terms. Instead of eliminating review over "any appeal," "all decisions," or "any determination" regarding discretionary relief, however, Congress instead chose to eliminate review over "judgments." The majority does not explain why Congress

chose to employ the term "judgment" *only* in § 242(a)(2)(B)(i).

It seems inconceivable, given the analysis set forth in this dissent, that the majority can conclude that this is not a close question of statutory interpretation. Precedent requires us to resolve close questions of statutory interpretation in favor of preserving, not eliminating, jurisdiction. We are also required to construe ambiguities in favor of the alien, not the government. If Congress wishes to amend IIRI-RA to make clear its intent to eliminate our jurisdiction over all decisions by the BIA regarding discretionary relief, it may do so. But until then, we should interpret § 242(a)(2)(B)(i) to eliminate jurisdiction only over decisions by the BIA that involve the exercise of discretion. Insofar as I believe that we retain jurisdiction over legal issues regarding the granting of the forms of relief enumerated in § 242(a)(2)(B)(i), I respectfully dissent.

Even though I would exercise jurisdiction over the petitioners' argument because it requires us to review a decision by the BIA that is not a "judgment," I concur in the result reached by the majority because the petitioners' argument that his adult daughter qualifies as a "child" for purposes of cancellation of removal under INA § 240A(b) is without merit.