**Abdul HAKEEM, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 00–70525.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 7, 2001

Filed Dec. 5, 2001

Murray D. Hilts and Richard Freitas, San Diego, California, for the petitioner.

Russell J.E. Verby and Allen W. Hausman, United States Department of Justice, Office of Immigration Litigation, Washington, D.C., for the respondent.

Before: HALL and TROTT, Circuit Judges and WINMILL,[1] District Judge.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Abdul Hakeem, a native and citizen of Pakistan, petitions for review of the Board of Immigration Appeals' ("BIA") decision dismissing his appeal from the Immigration Judge's ("IJ") denial of his application for asylum and withholding of removal.

I

Abdul Hakeem, a native and citizen of Pakistan, first entered the United States

---

1. The Honorable B. Lynn Winmill, United States District Judge for the District of Idaho, sitting by designation.

in 1984. In 1993, he returned to Pakistan and stayed three months before returning to the United States. Sometime in 1996, he returned to Pakistan again because his father had died. In December 1996, he reentered the United States.

On August 10, 1998, Hakeem was convicted of conspiracy to structure transactions to evade reporting requirements. On January 15, 1999, the Immigration and Naturalization Service served Hakeem with a notice to appear. On May 6, 1999, at the removal hearing, Hakeem admitted the relevant factual allegations and conceded deportability for overstaying his visa.

On July 22, 1999, Hakeem applied for asylum and withholding of removal. He claims that he is a member of the Ahmadi Muslim religion, and he will face persecution on account of his religion if returned to Pakistan.

According to the evidence of record, the Ahmadi believe in Qadiana, a prophet and the messiah who came after Mohammed. This distinguishes their faith from the majority Sunni and Shi'ite Muslim sects in Pakistan. The Sunni and Shi'ite believe Qadiana is a false prophet and regard the Ahmadi as heretics. The State Department's *Pakistan—Profile of Asylum Claims and Country Conditions (July 1997)* ("State Department profile") indicates that, in 1974, the constitution of Pakistan was amended to allow Ahmadis freedom to practice their religion provided they do not represent themselves as Muslim. But in 1984, Ordinance XX became law, providing up to a three-year sentence for Ahmadis who: (1) refer to Qadiana as a prophet; (2) use the Muslim call to prayer; (3) refer to themselves as Muslim, call their mosques "mosques," or use words that "outrages the religious feelings of Muslims;" or (4) use certain traditional Muslim greetings. The State Department profile indicates "[t]here have been a number of arrests and detention of Ahmadis under Ordinance XX," and there have been individual incidents of group violence against Ahmadis occurring between 1989 and 1996.

In addition, the State Department's 1998 report on human rights practices in Pakistan ("State Department report") indicates that, in 1986, the penal code was amended to provide the death penalty for defiling "the holy Prophet Mohammed." The report details instances where authorities have charged Muslims, Christians, and Ahmadis under the amendment, but no one has been executed under the amendment. Ahmadi leaders state that 44 Ahmadis were charged under the amendment in 1998.

As Hakeem testified, everyone in his family is Ahmadi. He has family members who still reside in Pakistan, including a brother, an aunt, and uncles. Hakeem testified to no other physical harm befalling his family based on their Ahmadi faith. Hakeem himself has never been physically harmed in Pakistan. During his two return trips to Pakistan, he practiced his religion and went to the mosque.

Hakeem's father converted from the Sikh religion to Ahmadi. Hakeem claims that according to Pakistan law, his father and his family are subject to the death penalty because he changed religions. However, the record shows that no one in his family, including his father, has been punished for the change.

The IJ denied Hakeem's application for asylum because he did not file for asylum within one year of April 1, 1997. The IJ also denied Hakeem's application for withholding of removal. Specifically, the IJ doubted Hakeem's credibility, and found that Hakeem had not shown that persecution was more likely than not upon return,

reasoning that Hakeem was never harmed for his beliefs, practiced his religion during his two visits to Pakistan, and has a brother who lives there unharmed.[2] The BIA dismissed Hakeem's appeal and adopted the Immigration Judge's reasoning. Hakeem timely filed his petition for review from the BIA's final order of removal.

## II

■ First, we must consider whether this court has jurisdiction over the IJ's determination that Hakeem failed to file his asylum application within one year of his entry into the United States.

8 U.S.C. § 1158(a)(2)(B) provides that an alien may not apply for asylum "unless the alien demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." The one-year filing period commences either on the alien's date of arrival in the United States or on April 1, 1997, whichever is later. 8 C.F.R. § 208.4(a)(2)(ii). Section 1158(a)(3) provides that "No court shall have jurisdiction to review any determination of the Attorney General under [Section 1158(a)(2) ]."

In *Flores–Miramontes v. INS*, 212 F.3d 1133, 1135 (9th Cir.2000), this court considered the similar language of 8 U.S.C. § 1252(a)(2)(C). Section 1252(a)(2)(C) provides that, "Notwithstanding any other provision of law, *no court shall have jurisdiction to review* any final order of removal against an alien" who is removable by reason of having committed certain criminal offenses. 8 U.S.C. § 1252(a)(2)(C) (emphasis added). The court concluded that it only has jurisdiction to determine whether jurisdiction exists. *See Flores–Miramontes*, 212 F.3d at 1135; *Matsuk v.*

*INS,* 247 F.3d 999, 1001 (9th Cir.2001). So, if the elements of section 1252(a)(2)(C) are satisfied, i.e., if the petitioner is an alien removable based on certain criminal offenses, then the court is without jurisdiction to review the final order of removal. *See Flores–Miramontes,* 212 F.3d at 1135; *Matsuk,* 247 F.3d at 1001.

Applying that reasoning to section 1158(a)(3), we need only determine whether the IJ acted under section 1158(a)(2). *See* 8 U.S.C. § 1158(a)(3). Here, without question, the IJ denied Hakeem's asylum application under section 1158(a)(2)(B). Thus, under section 1158(a)(3), we lack jurisdiction to review the IJ's determination that Hakeem failed to file his asylum application within one year of his arrival in the United States.

Hakeem contends that this court has jurisdiction to review the denial of his asylum application because this court still has jurisdiction over appeals of district court decisions on writs of habeas corpus brought by aliens pursuant to 28 U.S.C. § 2241. *See Magana–Pizano v. INS,* 200 F.3d 603, 608 (9th Cir.1999). Although this contention is legally accurate, it does not help Hakeem in this petition for review. Hakeem has not filed a writ of habeas corpus before the district court and a petition for habeas corpus review is not before this court. *See Montero–Martinez v. Ashcroft,* 249 F.3d 1156, 1160 (9th Cir. 2001) (deciding not to consider habeas corpus jurisdiction in petition for review from removal order where petitioner argued for habeas corpus jurisdiction, but had not filed a petition for habeas corpus review).

■ Hakeem also contends that the judicial review bar violates the due process and separation of powers clauses. In *Dul-*

---

**2.** The IJ also denied Hakeem's application for relief under the Convention Against Torture ("CAT"). This court declines to consider any

claims under the CAT because Hakeem did not raise CAT claims before the BIA or before this court.

*dulao v. INS,* 90 F.3d 396, 399–400 (9th Cir.1996), we held that a jurisdictional bar did not violate the due process or separation of powers clauses. *Duldulao* involved a provision of the Antiterrorism and Effective Death Penalty Act of 1996 that denied judicial review of certain deportation orders. The provision amended 8 U.S.C. § 1105a(a)(10) to read as follows: "(10) Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in section 241(a)(2) . . . (C) . . . shall not be subject to review by any court.". *See id.* at 398. We conclude that the provision at issue in *Duldulao* is substantially similar to section 1158(a)(3), and, therefore, Hakeem's contention with respect to the jurisdictional bar of section 1158(a)(3) lacks merit.

Accordingly, we dismiss for lack of jurisdiction Hakeem's petition for review as to the denial of his asylum application.

### III

■■■ Second, we must consider whether substantial evidence supports the IJ's denial of withholding of removal. In contrast to the denial of Hakeem's asylum application, this court has jurisdiction under 8 U.S.C. § 1252(a) to review the final order denying withholding of removal. Where, as here, the BIA clearly adopts and incorporates the IJ's reasoning, the court reviews the IJ's decision under the substantial evidence standard. *See Lopez–Reyes v. INS,* 79 F.3d 908, 911 (9th Cir. 1996). Under the substantial evidence standard, the court must uphold the IJ's decision unless the evidence compels a reasonable factfinder to reach a contrary result. *See id.* An applicant is entitled to withholding of removal if he demonstrates that it is "more likely than not" that he will be persecuted on account of his religion were he to return. *See Duarte de*

*Guinac v. INS,* 179 F.3d 1156, 1159 (9th Cir.1999), *citing* 8 C.F.R. § 208.16(b)(1).

The IJ made an adverse credibility finding based on a discrepancy between Hakeem's claimed Ahmadi faith and his passport, which listed his religion as Muslim. We do not find the IJ's reasoning persuasive. Hakeem provided an explanation for this discrepancy, but neither the BIA nor the IJ addressed Hakeem's explanation. *See Garrovillas v. INS,* 156 F.3d 1010, 1013 (9th Cir.1998) (holding that an adverse credibility finding was not supported by substantial evidence where the IJ did not address petitioner's explanation for the identified discrepancy).

The IJ offered alternative reasons, however, for denying Hakeem's application for withholding of removal. These alternative reasons are supported by substantial evidence. Thus, reviewing Hakeem's claim as if his testimony were wholly credible, we conclude that Hakeem's evidence does not compel a finding that it is more likely than not that he will be persecuted on account of his religion were he to return to Pakistan. *See Berroteran–Melendez v. INS,* 955 F.2d 1251, 1255 (9th Cir.1992).

■■■ The standard for withholding of removal is more stringent than the well-founded fear standard of asylum in that it requires the applicant to show a greater likelihood of persecution. *See id.* at 1258. But even for purposes of the less stringent asylum standard, the applicant must show more than the existence of a generalized or random possibility of persecution in his native country. *See Mgoian v. INS,* 184 F.3d 1029, 1035 (9th Cir.1999). An applicant's claim of persecution upon return is weakened, even undercut, when similarly-situated family members continue to live in the country without incident, *see Mendez–Efrain v. INS,* 813 F.2d 279, 282 (9th Cir.1987), or when the applicant has returned to the country without incident, *see*

*Belayneh v. INS,* 213 F.3d 488, 491 (9th Cir.2000).

Here, the State Department report indicates that of the 3.5 million Ahmadis in Pakistan, 145 Ahmadis are awaiting trial under the blasphemy laws, and that in 1998, 44 Ahmadis were charged under the blasphemy laws. Although unfortunate, this evidence does not compel the conclusion that Hakeem, more likely than not, will be arrested or persecuted under these laws.

Hakeem contends that according to Koranic law, not Pakistani secular law, one is sentenced to death if one changes religions. This contention, however, does not change the fact that no one in Hakeem's family has ever been charged, arrested, or physically harmed based on their Ahmadi faith. In addition, Hakeem has returned twice to Pakistan and practiced his faith without incident. Hakeem has not demonstrated that it is more likely than not that he will face physical harm upon return to Pakistan. *Cf. Mgoian,* 184 F.3d at 1038 (granting withholding petition where petitioner was member of prominent Kurdish–Moslem family, her uncle was murdered, a witness was harassed into silence, her mother was threatened with death, and she received threats directing her to leave the country).

Accordingly, because the IJ's decision denying withholding of removal is supported by substantial evidence, we deny the petition for review as to the denial of withholding of removal.

**PETITION FOR REVIEW DISMISSED IN PART AND DENIED IN PART.**