

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-14-2004

# Raharjo v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1941

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

## Recommended Citation

"Raharjo v. Atty Gen USA" (2004). *2004 Decisions.* Paper 842.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/842

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 03-1941

———————

IMMANUEL RUDY RAHARJO,

Petitioner

v.

UNITED STATES DEPARTMENT OF
JUSTICE, ATTORNEY GENERAL
ASHCROFT,

Respondent

———————

On Petition for Review of a Final Order of the
Board of Immigration Appeals
(No. A77-546-240)

———————

Submitted Under Third Circuit LAR 34.1(a)
March 23, 2004

Before: ROTH, AMBRO, and CHERTOFF, Circuit Judges

(Opinion filed April 14, 2004)

———————

OPINION

———————

AMBRO, <u>Circuit Judge</u>

Immanuel Rudy Raharjo petitions for review of an Immigration Judge's ("IJ")

decision to deny his applications for asylum and withholding of removal, which became a

final and appealable order when the Board of Immigration Appeals ("BIA") affirmed

without opinion.  Because Congress has precluded our review of the IJ's decision to reject

Raharjo's late-filed asylum application, we do not consider that aspect of Raharjo's

petition.  We do, however, have jurisdiction to review the IJ's denial of withholding of

removal.  Because that decision is supported by substantial evidence in the record, we

deny Raharjo's petition.

## I.    Facts and Procedural Posture

Raharjo was born Kok Mie So to ethnic Chinese parents in Surabaya, Indonesia in

1972.[1]  Using the name Immanuel Rudy Raharjo, he entered the United States on a

nonimmigrant B-1 visa that authorized him to remain until December 10, 1995.  He

stayed in the United States after the visa had expired, and in June 1999 he applied to the

Immigration and Naturalization Service[2] ("INS") for asylum and withholding of removal,

citing discrimination and violence against ethnic Chinese in Indonesia.

---

[1]Raharjo's birth certificate and asylum petition indicate that 1972 is his year of birth,
though his passport states that he was born in 1975.

[2]As a result of the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat.
2135 (2002), the INS has ceased to exist as an agency within the Department of Justice
and its enforcement functions have been transferred to the Department of Homeland
Security.

In August 1999, the INS charged Raharjo in a Notice to Appear with remaining in the United States on an expired visa. At his hearing before the IJ, Raharjo conceded removability but renewed his application for asylum and his application for withholding of removal (and, in the alternative, voluntary departure).

In April 2000, the IJ denied Raharjo's applications and ordered him removed to Indonesia. Specifically, the IJ found that Raharjo's asylum petition was time-barred under Section 208(a)(2)(D) of the Immigration and Nationality Act ("INA"), which requires an alien to apply for asylum within one year of arrival in the United States. The IJ also denied his withholding of removal application, finding that the discrimination and harassment Raharjo suffered in Indonesia did not rise to the level of persecution as required by the INA. Nor did Raharjo satisfy the IJ that he would face future persecution if removed to Indonesia.

The BIA affirmed the IJ's decision without opinion in March 2003. Raharjo timely petitioned for review of the IJ's denial of asylum and withholding of removal application (though not the IJ's denial of voluntary departure).

## II. Asylum

To be eligible for asylum, an alien must file an asylum application within one year of arriving in the United States. 8 U.S.C. § 1158(a)(2)(B). But the Attorney General may waive the one-year time limitation if the alien can demonstrate "either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or

extraordinary circumstances relating to the delay." *Id*. § 1158(a)(2)(D). Here the IJ found that Raharjo's June 1999 asylum application was untimely because Raharjo filed it more than three years after his December 1995 arrival in the United States. Even assuming that the anti-Chinese rioting that erupted in Indonesia in May 1998 amounted to changed or exceptional circumstances under § 1158(a)(2)(D), the IJ decided that Raharjo's delay of more than a year from that time was unreasonable.

While we ordinarily have jurisdiction to review a final removal order under 8 U.S.C. § 1252(a), the INA also provides that "no court shall have jurisdiction to review any determination by the Attorney General under paragraph [§ 1158(a)](2)," which includes the provision relating to whether changed or extraordinary circumstances warrant waiving the one-year time limitation. *Id*. § 1158(a)(3). We have expressly held that § 1158(a)(3) "clearly deprives us of jurisdiction to review the IJ's determination that an asylum petition was not filed within the one year limitations period, and that such period was not tolled by [changed or] extraordinary circumstances." *Tarrawally v. Ashcroft*, 338 F.3d 180, 185 (3d Cir. 2003); *see also Tsevegmid v. Ashcroft*, 338 F.3d 1231, 1235 (10th Cir. 2003); *Fahim v. INS*, 278 F.3d 1216, 1217 (11th Cir. 2002) (per curiam); *Hakeem v. INS*, 273 F.3d 812, 815 (9th Cir. 2001); *Ismailov v. Reno*, 263 F.3d 851, 855 (8th Cir. 2001). Therefore, we lack jurisdiction to review the IJ's denial of Raharjo's asylum petition as untimely.

4

### III.   Withholding of Removal

Under the INA, the Attorney General must grant a withholding of removal if an alien shows that it is more likely than not that his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group or political opinion if the alien is removed to his home country.  8 U.S.C. § 1231(b)(3).  If the alien establishes past persecution, there is a rebuttable presumption that, upon removal, the alien's life or freedom would be threatened in the future.  8 C.F.R. § 208.16(b)(1)(i).  This presumption may be overcome if there is a change in the circumstances of the country of removal such that the applicant's life or freedom would no longer be threatened, or if the applicant could avoid a future threat to his life or freedom by reasonably relocating to another part of the country of removal. 8 C.F.R. § 208.16(b)(1)(i)(A) & (B).

### A.   Jurisdiction

The Government argues that we lack jurisdiction to consider Raharjo's appeal of the IJ's denial of withholding of removal.  Because Raharjo did not appeal this aspect of the IJ's decision to the BIA, the Government asserts, he failed to exhaust all administrative remedies, which precludes our judicial review under 8 U.S.C. § 1252(d)(1).  Raharjo's Notice of Appeal states that he "appeals the Immigration Judge's decision dated April 21, 2000, denying asylum and withholding of removal."  But the Government argues that this statement does not effectively exhaust his withholding of

5

removal claim, because the accompanying brief to the BIA is silent on withholding of removal.

In *Abdulrahman v. Ashcroft*, 330 F.3d 587 (3d Cir. 2003), we decided that the petitioner had not waived his argument that the IJ improperly acted as a witness at the removal hearing, reflecting bias in violation of his due process rights. We explained: "While Abdulrahman's appeal to the Board did not frame the matter in due process terms in so many words, both his notice of appeal and his later brief to the Board argued that the IJ impermissibly based her decision on her own speculative beliefs rather than on the evidence. As such, he adequately alerted the Board to the issue, thus preserving it for our review." *Id*. at 595 n.5.

We determine that Raharjo's appeal "adequately alerted the Board to the issue" of withholding of removal. Not only did his Notice of Appeal raise the issue, although cursorily and without elaboration in his brief to the BIA, that brief contained challenges to the IJ's denial of asylum that the BIA could also read as challenges to the withholding of removal decision. In the brief, Raharjo described the record evidence of violence and discrimination he suffered as an ethnic Chinese in Indonesia. A.R. 19–21. The BIA could have understood the same argument as a challenge to the IJ's finding that Raharjo had not suffered past persecution and, thus, was not entitled to the presumption of eligibility for withholding of removal. 8 C.F.R. § 208.16(b)(1)(i). Raharjo also argued in his brief to the BIA that the same restrictive conditions under which he suffered in

6

Indonesia still exist today. A.R. 21. Though he presented this argument in support of his challenge to the IJ's asylum decision, it also relates to the likelihood that Raharjo's life or freedom would be threatened if he is removed—the standard for withholding of removal. 8 U.S.C. § 1231(b)(3).

Raharjo could have better organized his brief to the BIA to include, under separate heading, an appeal of the IJ's denial of withholding of removal. But it is worth noting that the IJ himself did not separately state the factual basis for his withholding of removal decision from his findings regarding asylum. Rather, he denied withholding of removal "for the reasons stated above"—*i.e.*, his findings regarding past persecution and probability of future persecution should Raharjo return to Indonesia, which he made in support of his finding that the asylum application was untimely. A.R. 84–87.

Thus while Raharjo's appeal to the BIA may not have challenged the withholding of removal decision "in so many words," it "adequately alerted" the BIA that he was appealing the IJ's decision on this issue. *Abdulrahman*, 330 F.3d at 595 n.5.[3] If the naked statement in his Notice of Appeal "appealing from the Immigration Judge's decision of April 21, 2000, denying asylum and withholding of removal" was not sufficient, then it is sufficiently augmented by the brief's asylum arguments that also

---

[3] *Alleyne v. INS*, 879 F.2d 1177 (3d Cir. 1989), also cited by the Government, is distinguishable. Though we determined that our jurisdiction in that case was foreclosed by petitioner's failure to appeal the issue to the BIA, "[n]one of the errors asserted in [the petitioner's notice of appeal] *even arguably* raise[d] the issue" before us. *Id*. at 1183 (emphasis added).

7

support an appeal from the denial of withholding of removal. And such a reading of Raharjo's brief is not unreasonable in light of the fact that the IJ's decision was similarly organized. Thus we find that Raharjo effectively appealed the withholding of removal decision to the BIA. His judicial appeal is not barred for non-exhaustion, and we have jurisdiction to consider it.

**B.      Raharjo's Appeal**

We must affirm the IJ's denial of withholding of removal if substantial evidence supports the IJ's conclusion that Raharjo failed to prove past persecution or torture (so as to establish a rebuttable presumption regarding future threats to his life and freedom) or a clear probability (more likely than not) that he would be persecuted or tortured if returned to Indonesia. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). We can only overturn the IJ's decision if "the evidence he presented was so compelling that no reasonable factfinder could fail to find" in his favor. *Id*. at 483–84.

The IJ found that Raharjo had experienced harassment and discrimination in Indonesia that did not rise to the level of persecution. While the violence and harassment against ethnic Chinese, starting in May 1998 and concentrated in Djakarta, is well-documented in the record, the IJ noted that Raharjo was in the United States, not Indonesia, when the riots broke out in May 1998, nor was his family in Djakarta at that time. Furthermore, the only evidence of violence against Raharjo—a 1993 altercation

8

with a store cashier[4]—was reasonably characterized by the IJ as an incident of harassment and discrimination that was heightened to violence by Raharjo's own hand.

The IJ also found that Raharjo had not demonstrated a clear probability of persecution should he return to Indonesia. This is also a reasonable finding, in light of evidence that Raharjo's family in Indonesia—including his wife, child, mother, step-father, and siblings—was not harmed during the May 1998 riots and has remained in Indonesia without incident. While the IJ acknowledged that Indonesia faced "ethnic and religious altercations and what might even be perceived as rising at times to civil warfare," he did not accept this as evidence of a particular threat to Raharjo should he return to Indonesia. In his petition Raharjo argues that this was error because he is not required to show that he would be singled out for persecution, as long as there is a pattern or practice of persecution against ethnic Chinese in Indonesia. 8 C.F.R. § 208.13(b)(2)(i)(A)–(B). But Raharjo did not show, and the IJ did not find, that, in general, Chinese in Indonesia were persecuted. So the IJ reasonably did not infer that it was more likely than not Raharjo would be persecuted as well.

## IV. Conclusion

Because Congress has precluded our review of the IJ's decision to deny Raharjo's

---

[4]Raharjo and the cashier got into a shoving match after the cashier short-changed Raharjo's wife (then-girlfriend) and called her ethnic slurs. Raharjo escalated the altercation by picking up a stick. He was stabbed in the left side (waist and leg) and had to recover in the hospital for seventeen days.

application for asylum as untimely, we do not consider that aspect of Raharjo's appeal. While we do have jurisdiction to consider Raharjo's appeal of the IJ's denial of withholding of removal, we determine that the IJ's findings are supported by substantial evidence. We therefore deny Raharjo's petition for review.