

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-2-2005

# Lie v. Secretary Homeland

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4415

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

## Recommended Citation

"Lie v. Secretary Homeland" (2005). *2005 Decisions.* Paper 1521.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1521

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


Case No: 03-4415


STELLA URSSULA KIEM NIO LIE,


Petitioner


v.


SECRETARY OF DEPARTMENT OF HOMELAND SECURITY;
BUREAU OF CITIZENSHIP AND IMMIGRATION SERVICES


Respondent


On petition for review of a final order
of the Board of Immigration Appeals
File No: A79-300-764
_____


Argued November 19, 2004


Before: ROTH and SMITH, *Circuit Judges*,
and DEBEVOISE,* *District Judge*


(Filed: February 2, 2005)


COUNSEL: Martin A. Kascavage, Esq. (Argued)
Schoener & Kascavage, P.C.
400 Market Street, Suite 420
Philadelphia, PA 19106

---

*The Honorable Dickinson R. Debevoise, Senior United States District Judge for the District of New Jersey, sitting by designation.

*Attorney for Petitioner*

Peter D. Keisler, Assistant Attorney General, Civil Decision
Robert M. Loeb, Appellate Staff Attorney
Charles W. Scarborough, Appellate Staff Attorney (Argued)
Alison M. Igoe, Esq.
U.S. Department of Justice
Civil Division, Room 9130
601 D Street N.W.
Washington, D.C.  20530-0001
*Attorneys for Respondent*

_____

OPINION OF THE COURT
_____

SMITH, *Circuit Judge*.

Appellant Stella Urssula Kiem Nio Lie ("Lie") appeals a decision of the Board of Immigration Appeals ("BIA") in which the BIA summarily affirmed the Immigration Judge's ("IJ's") denial of Lie's application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT").  We will affirm.

## I.     FACTUAL BACKGROUND

### A.     Lie's Testimony

The parties are in basic agreement concerning the factual underpinnings of Lie's petition for relief.  Lie is a citizen of Indonesia.  Lie's asylum hearing was held on March 25, 2002.  She conceded removability but sought relief in the form of asylum, withholding of removal, and protection under the CAT.  Lie testified that she had been

subjected to generalized harassment by native Indonesians on account of her ethnicity (Chinese) and religion (Catholic) since early childhood. She also testified concerning a number of specific incidents in which she or her family members were threatened, robbed, and had their car vandalized. In connection with one of these incidents, she testified that the "native people" who stopped her car said "Chinese. Chinese. Let's just ask her for some money." In connection with another incident, she indicated that a group of spectators who had been viewing a soccer match shouted "Chinese, Chinese," approached her car, hit it with sticks, and broke off the rearview mirror.

The most significant individual incident about which Lie testified occurred during widespread rioting by Indonesians during 1998. According to Lie, her house was broken into by a mob, and she took shelter in a nearby Chinese funeral home. She indicates that she heard the individuals who had broken into the house chanting "Chinese. Chinese. Let's burn - burn - burn." Lie testified that when she went home the next day, the windows and doors in her home were broken, and her possessions, including her television, had been stolen. Lie stated that she reported this incident to the police, and the police took her statement, but "the police didn't do any follow up."

Lie stated that she has kept in contact with her husband and children (who remain in Indonesia to this day), and that her children were increasingly afraid because they feared "mistreatment" by native Indonesians. Lie indicated that after the September 11 terrorist attacks on the United States, the Muslims in Indonesia became "even more

3

brutal." She testified that native Indonesians can recognize the Chinese because the skin color of the Chinese differs from that of the natives. She also testified that Indonesians of Chinese descent are presumed by the rest of the population to be Christians.

### B.     The IJ's Decision

The IJ rejected Lie's claims for asylum, withholding of removal, and relief under the CAT. She did, however, grant Lie's request for voluntary departure. With respect to asylum, the IJ determined that Lie's application had not been timely filed within one year of her arrival in the United States, as required by 8 U.S.C. § 1158(a)(2)(B). The IJ also found that Lie's involvement in a car accident approximately one week before the one-year period expired did not constitute an "extraordinary circumstance" that would justify excusing Lie's late filing pursuant to 8 U.S.C. § 1158(a)(2)(D).

Although she had determined that Lie's asylum application was untimely, the IJ went on to address the issue on the merits, and she concluded that Lie had not carried her burden of establishing past persecution or a credible fear of future persecution. The IJ also found that because Lie had failed to establish that it was "more likely than not" that she would be persecuted due to her ethnicity or religion if returned to Indonesia, Lie was not eligible for withholding of removal. The IJ also held that Lie had failed to establish that she faced torture if returned to Indonesia, and thus was not eligible for relief under the CAT.

4

## II.  ANALYSIS

Where the BIA affirms without opinion under its streamlining regulations, we review the decision of the IJ.  *See Berishaj v. Ashcroft*, 378 F.3d 314, 316 (3d Cir. 2004). Whether an alien has demonstrated past persecution or a well-founded fear of future persecution is a factual determination reviewed under the substantial evidence standard. *Dia v. Ashcroft*, 353 F.3d 228, 247 (3d Cir. 2003) (en banc).  Under this standard, "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)). "Thus, the question whether an agency determination is supported by substantial evidence is the same as the question whether a reasonable fact finder could make such a determination based upon the administrative record."  *Id.* at 249.

### A.  We Lack Jurisdiction To Review The IJ's Dismissal Of Lie's Asylum Claim

An alien must prove by clear and convincing evidence that she filed her asylum application within one year of arrival in the United States.  8 U.S.C. § 1158(a)(2)(B). However, if the alien can establish that there are "extraordinary circumstances relating to the delay in filing the application," failure to file the application within the one year period may be excused.  8 U.S.C. § 1158 (a)(2)(D).  Most important for current purposes, "INA Section 208(a)(3), 8 U.S.C. § 1158(a)(3), provides that 'no court shall have jurisdiction to review any determination by the Attorney General under paragraph [a]2,' which includes the provision relating to whether extraordinary circumstances warrant

5

waiving the one year time limitation for asylum applications." *Tarrawally v. Ashcroft*, 338 F.3d 180, 185 (3d Cir. 2003).

Here, the IJ found that Lie's asylum application was not timely filed within one year of her arrival in the United States. She further found that Lie's failure was not excused by any of the alleged "extraordinary circumstances" cited by Lie. On appeal, the government, citing *Tarrawally*, argues that we lack jurisdiction to review the IJ's determination that Lie's asylum application was untimely. Lie's reply brief concedes that the government's position is correct. Because this case falls squarely within 8 U.S.C. § 1158(a)(3)'s jurisdictional exclusion, we lack jurisdiction to review the IJ's determination that Lie's asylum application was not timely filed within one year of Lie's arrival in the United States.

**B.      The IJ's Determination That Lie Is Not Eligible For Withholding Of Removal Is Supported By Substantial Evidence**

In order to obtain withholding of removal, an alien must establish by a "clear probability" that her life or freedom would be threatened in the proposed country of deportation or removal. *See Tarrawally*, 338 F.3d at 186 (citing *INS v. Stevic*, 467 U.S. 407 (1984) and *Janusiak v. INS*, 947 F.2d 46, 47 (3d Cir. 1991)). A "clear probability" in this context means "more likely than not." *Stevic*, 467 U.S. at 429-30. As in the case of asylum, the applicant for withholding of removal must also show that, if deported, the persecution she faces will be "on account of" race, religion, nationality, membership in a particular social group, or political opinion. *See Lukwago v. Ashcroft*, 329 F.3d 157, 182

6

(3d Cir. 2003) (citing 8 C.F.R. § 208.16(b)). The applicant can seek to establish eligibility either by demonstrating past persecution or by showing a likelihood of future persecution. *See* 8 C.F.R. § 208.16(b). However, the "clear probability" or "more likely than not" standard applicable to a withholding claim is higher than the "well-founded fear of persecution" standard applicable to an asylum claim. *See Lukwago*, 329 F.3d at 182.

Lie attempted to establish a future threat to life or freedom by proving that she suffered past persecution. The IJ held that Lie had not carried her burden of proof for obtaining asylum based upon past persecution, and by extension had not met the higher burden for obtaining withholding of removal. The IJ found that Lie had failed to establish that the events described in her testimony rose to the level of "persecution." In support of this conclusion, the IJ noted that Lie's family evidently continued to live in Indonesia, and that Lie's testimony revealed that the family members were "living a somewhat normal life" and were "living in relative peace in Indonesia." The IJ also noted that the majority of the incidents Lie testified about, including being taunted as a child, being robbed on one occasion, and having damage done to her car, were properly characterized as incidents of "harassment and discrimination" rather than persecution. With respect to the 1998 burglary of Lie's home, the IJ noted that the 2001 Country Conditions Report indicated that racially-motivated attacks against Chino-Indonesians peaked in 1998, and had dropped sharply since then. The IJ also emphasized that Lie's family had left the Surabaya area where their house was located after this incident

7

occurred, but they chose voluntarily to return and had lived in relative peace since then.

We believe the IJ's determination that Lie failed to demonstrate past persecution is supported by substantial evidence. A claim based upon past persecution requires the applicant to demonstrate (1) an incident, or incidents, that rise to the level of persecution; (2) "on account of" one of the statutorily-protected grounds; and (3) committed by the government or forces the government is either "unable or unwilling" to control. *Gao*, 299 F.3d at 272. With respect to the vast majority of incidents referenced in Lie's testimony, it seems clear that they simply do not rise to the level of persecution. Lie gives no evidence that she or her family suffered physical harm in connection with any of these incidents, nor does she provide evidence that these incidents constituted a threat to her life or freedom. As we have emphasized on previous occasions, "persecution" includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a real threat to life or freedom." *Lin v. INS*, 238 F.3d 239, 244 (3d Cir. 2001); *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993). Persecution "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Fatin*, 12 F.3d at 1240.

The only incident that arguably could reach the persecution threshold is the 1998 burglary and vandalism of Lie's house, when belongings were stolen by a group that, according to Lie, shouted threats against the Chinese. The primary damage inflicted as a result of this incident was the economic loss associated with the vandalism and theft of

8

certain possessions. However, the IJ found that any inference concerning the severity of this incident was somewhat undermined by the fact that Lie's family returned to their home shortly after the incident occurred, and that Lie's husband and children have by Lie's own admission continued living in the same area even after Lie left Indonesia and came to the United States. *See Hakeem v. INS*, 273 F.3d 812, 816 (9th Cir. 2001) ("An applicant's claim of persecution upon return is weakened, even undercut, when similarly-situated family members continue to live in the country without incident."). In addition, the IJ noted that Lie did not immediately seek to leave the country following this incident. Instead, she remained until her job as a bank teller was terminated, at which point she took time to close out customer accounts and successfully to file for a severance package prior to departing for the United States.

The various factors discussed above constitute substantial evidence for the IJ's finding that the incidents described by Lie did not prove that she was a victim of past persecution. In addition, where private actors are involved, an alien seeking to demonstrate the existence of past persecution must show that the alleged incidents involved "forces the government is either 'unable or unwilling' to control." *See Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002). The facts that Lie and her family were able to return to their home after the 1998 incident, that Lie's family continues to live there in relative peace, and that Lie chose to remain in Indonesia to conclude various business affairs relating to her employment, undermine Lie's assertion that the government of

9

Indonesia was unable or unwilling to take steps to control the lawlessness reflected in the 1998 attack on Lie's home. Viewing the record as a whole, the 1998 incident stands out as an isolated occurrence of private violence that differs from the more pervasive harassment and discrimination described throughout the rest of Lie's testimony. The IJ reasonably concluded that this one incident, without more, did not give rise to an inference that the Indonesian government was unable or unwilling, as a general matter, to control such violence. Indeed, the IJ noted that the 2001 Country Conditions Report for Indonesia states that "government officials promote racial and ethnic tolerance" and that attacks against Chino-Indonesians have dropped sharply since mid-1998.

While Lie's primary theory in support of her claim has focused on establishing past persecution, Lie also argues that she has demonstrated a clear probability of future persecution in Indonesia. The IJ disagreed, and the IJ's conclusion is supported by substantial evidence. As noted above, the 2001 Country Conditions Report indicates that attacks against Chino-Indonesians have dropped sharply since mid-1998. In addition, the same Country Conditions Report explains that since 2000 the Indonesian government has taken various other steps to ameliorate official discrimination against Indonesia's ethnic Chinese population. As to religious persecution, the Country Conditions Report acknowledges that there have been a large number of attacks against Christians in Indonesia, particularly in the summer of 2000. However, the Country Conditions Report also indicates that the Indonesian government opposes the activities of the Muslim

10

militants. Indeed, the Indonesian government has dispatched troops to quell violence instigated by Muslims, and has arrested various persons suspected of participating in attacks against Christians. Thus, regardless of the grounds upon which Lie claims to fear future persecution, substantial evidence in the record supports the IJ's conclusion that Lie has not demonstrated a clear probability that she faces persecution by forces the government is unable or unwilling to control.

We note that at oral argument, counsel for Lie urged us to consider a recent Ninth Circuit decision that held that a Chino-Indonesian asylum applicant had established a well-founded fear of future persecution in Indonesia. The petitioner in *Sael v. Ashcroft*, 386 F.3d 922 (9th Cir. 2004), presented testimony concerning her experiences in Indonesia that was similar in many respects to the testimony presented by Lie. *Sael* does not bind us, and is readily distinguishable. The petitioner in *Sael* sought asylum, and the Ninth Circuit emphasized the relatively low threshold of the "well-founded fear" standard, stating that "[e]ven a ten percent chance that the applicant will be persecuted in the future is enough to establish a well-founded fear." *Sael*, 386 F.3d at 925. This relaxed standard is obviously a far cry from the "more likely than not" standard that Lie must meet in order to obtain withholding of removal. In addition, the petitioner in *Sael* fled Indonesia and came to the United States along with her husband. *See id.* at 924. In contrast, the IJ here noted that Lie's family remained behind in Indonesia, living in the same location "in relative peace," and found that this fact undermined Lie's claim that she

11

faced a clear probability of future persecution in Indonesia.[1]

## III.   CONCLUSION

For the foregoing reasons, the order of the BIA is affirmed, and the petition for review is denied.

---

[1]Lie also sought relief under the CAT, but this claim essentially has been waived on appeal. *See Kopec v. Tate*, 361 F.3d 772, 775 n.5 (3d Cir. 2004) ("An issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue . . . will not suffice to bring that issue before this court") (quoting *Laborer's Int'l Union v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)).  In any event, the IJ properly determined that Lie had not carried her burden of establishing that "it is more likely than not" that she would be tortured if removed to Indonesia.  *See Tarawally*, 388 F.3d at 187-88 (quoting 8 C.F.R. § 208.16(c)(2)).