

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-23-2006

# Soebiakto v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2082

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Soebiakto v. Atty Gen USA" (2006). *2006 Decisions.* Paper 1548.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1548

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-2082

———

BAM BANG SOEBIAKTO,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

———

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
BIA No. A79-326-573
(Honorable Rosalind K. Malloy, Immigration Judge)

———

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 31, 2006

Before: MCKEE, VAN ANTWERPEN, and SILER*, <u>Circuit Judges</u>.

(Filed February 23, 2006)

———

OPINION OF THE COURT

———

_____

\*      Honorable Eugene E. Siler, Jr., Circuit Judge for the United States Court of Appeals for
the Sixth Circuit, sitting by designation.

SILER, Circuit Judge.

Petitioner Bam Bang Soebiakto, a native and citizen of Indonesia, petitions for review of a final order of removal issued by the Board of Immigration Appeals ("BIA") that affirmed without opinion the Immigration Judge's ("IJ") denial of his applications for relief. For the reasons set forth below, we dismiss the petition in part and deny the petition in part.

## I. Factual Background

Because we write solely for the benefit of the parties, we will set forth only those facts necessary to our analysis. Soebiakto, a 37 year old married male, fled Indonesia in 1999. He arrived in New York as a non-immigrant visitor, and overstayed his visa. Before the IJ, he conceded removability but sought relief from removal in the form of asylum and withholding of removal.

In his written application for relief, Soebiakto claimed that because he was ethnically Chinese and a Christian, he had been mistreated and discriminated against in Indonesia. He stated that he sought asylum because he feared future persecution if he remained in Indonesia and he believed he could become the target of violence by native Indonesians. He also sought asylum on the basis of past persecution, citing "bitter experiences" as a result of his religion and ethnicity.

Soebiakto owned a shop in Indonesia and claimed that native Indonesian gangs came there asking for security money. He alleged that he was beaten while gang members looted and vandalized his shop. He also claimed that they harassed him and his wife for money while they were stopped at a traffic light, but that he did not open the window and sped away when the light turned green.

At the hearing, Soebiakto testified that he was born Christian, attended the Pentecostal church in Indonesia weekly, and graduated from a Christian university. However, twice Soebiakto admitted

2

that he encountered no problems in Indonesia on the basis of his Christianity.

Soebiakto testified that he learned of the possibility of asylum relief through his friends and his church after arriving in the United States, but wanted to wait until his wife joined him here before applying. He also testified that he knew about the possibility of asylum before visiting the United States and that he intended to apply for asylum upon arrival, but that he was unsure of the process.

The 2000 Country Report on Human Rights Practices ("Report") admitted at Soebiakto's hearing stated that the Indonesian Constitution provided for religious freedom for Christians. The Report noted that the government officially promoted racial and ethnic tolerance, and that ethnic Chinese comprised three percent of the Indonesian population, by far the largest non-indigenous minority group. The Report also noted that, due to the substantial role in the economy played by ethnic Chinese, socioeconomic and political tensions often arise between poor Muslims and more affluent Sino-Indonesian Christians. Specifically, this anti-Chinese sentiment led to economically motivated attacks on Chinese-owned businesses in 1998. However, since that time, the government has revoked decrees that forbade the public celebration of the Chinese New Year, the instruction of the Chinese language, and the possession of Chinese language publications.

## II. Analysis

The IJ pretermitted Soebiakto's claim for asylum, concluding that his application was not timely filed. Soebiakto appeals, claiming error in the IJ's denial of asylum. An alien must prove by clear and convincing evidence that he filed for asylum within the requisite one year period. 8 U.S.C. § 1158(a)(2)(B). However, if the alien can demonstrate extraordinary circumstances prevented him from filing within the one year time period, the time limitation may be waived in the IJ's discretion. 8 U.S.C. § 1158(a)(2)(D).

3

"In most cases, this court has jurisdiction to review a final order of removal resulting from the denial of an asylum request." *Tarrawally v. Ashcroft*, 338 F.3d 180, 185 (3d Cir. 2001) (citing 8 U.S.C. § 1252(a)(1)). However, "[t]he language of 8 U.S.C. § 1158(a)(3) clearly deprives [this court] of jurisdiction to review an IJ's determination that an asylum petition was not filed within the one year limitations period, and that such period was not tolled by extraordinary circumstances." *Id.*

Here, the IJ found that Soebiakto failed to apply for asylum within one year of his arrival in the United States, as he arrived on October 21, 1999 and filed his application for asylum in April or May of 2001. She further found that Soebiakto was aware of the application process but did not timely apply and that Soebiakto failed to demonstrate extraordinary circumstances or changed country conditions which would waive the one year deadline. Because we lack jurisdiction to review the IJ's denial of asylum on the basis of untimeliness, *Tarrawally*, 338 F.3d at 185-86, we dismiss Soebiakto's petition for review as to the denial of his asylum claim. *See Hakeem v. INS*, 273 F.3d 812, 815 (9th Cir. 2001).

The IJ additionally found that Soebiakto presented insufficient evidence to warrant a grant of withholding of removal. An alien is eligible for withholding of removal if "the Attorney General decides that [his] life or freedom would be threatened in [his home] country on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3). Under this provision, he must demonstrate a "clear probability of persecution." *Fatin v. INS*, 12 F.3d 1233, 1238 (3d Cir. 1993). As in an asylum claim, the alien must prove persecution on one of the statutorily enumerated grounds that was committed by the government or forces the government is unable or unwilling to control. *See Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002).

4

Where the BIA affirms the decision of the IJ without opinion, we review the IJ's decision as if it were the BIA's. 8 C.F.R. § 1003.1(e)(4); *Gao,* 299 F.3d at 271. Whether an applicant for withholding has demonstrated a clear probability of persecution is a factual determination reviewed under the substantial evidence standard. *Gao*, 299 F.3d at 272.

The IJ's conclusion that Soebiakto failed to demonstrate that he qualified for withholding of removal is supported by substantial evidence. Soebiakto's "bitter experiences" could not fairly be characterized as rising to the level of persecution. Persecution encompasses "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom," but does not encompass "all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Fatin*, 12 F.3d at 1240. Furthermore, "generally harsh conditions shared by many other persons" - here, other ethnic Chinese Christians - "do not amount to persecution." *Id*. & n.10 (approving the BIA's definition of persecution) (internal quotations and citations omitted).

The IJ reasonably concluded that Soebiakto should have supported his testimony with corroborating evidence. While the applicant's credible testimony "may be sufficient to sustain the burden of proof without corroboration," the BIA may count a failure to corroborate against an alien when (1) it is reasonable to expect corroboration and (2) the alien lacks a satisfactory explanation for not corroborating. *Abdulai v. Ashcroft*, 239 F.3d 542, 552-53 (3d Cir. 2001).

The IJ never explicitly discredited Soebiakto's testimony, but found his testimony alone insufficient evidence of persecution. In her opinion, the IJ set forth in great detail all of Soebiakto's claims and noted inconsistencies between his oral testimony and his written claims of persecution (for example, when native Indonesians harassed Soebiakto and his wife in their car at a stop light,

5

he stated in his affidavit that he gave them no money, but in his hearing he testified that he gave them 1,000 rupiah). In all, three pages of the IJ's opinion offer support for why she believed it was reasonable to expect corroboration. For example, Soebiakto claimed to have owned several businesses in Indonesia, yet he provided no documentation to evidence that he ever owned these businesses. Also, given that all of Soebiakto's family were still in Indonesia, the IJ believed they could have provided corroboration of his claims relatively easily.

Finally, the IJ correctly found that because Soebiakto admitted he did not suffer persecution on account of his religion, and because he was able to attend church regularly while in Indonesia, he did not demonstrate persecution on this ground and accordingly did not merit withholding of removal.

### III. Conclusion

For the foregoing reasons, we will dismiss Soebiakto's petition for review of his asylum claim and deny his petition for review of withholding of removal.