

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-14-2006

# Ang v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3312

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Ang v. Atty Gen USA" (2006). *2006 Decisions.* Paper 897.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/897

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-3312

———

THIAN HOK ANG;
UNTARI KUSUMA DEWI,

Petitioners

v.

ATTORNEY GENERAL OF
THE UNITED STATES

Respondent

———

Petition for Review of an Order
of the Board of Immigration Appeals
(Nos. A95-838-364, A95-838-365)
Immigration Judge: Donald Vincent Ferlise

———

Submitted Under Third Circuit LAR 34.1(a)
June 13, 2006

Before:  FISHER, ALDISERT and LOURIE* Circuit Judges

(Filed June 14, 2006)

———

OPINION OF THE COURT

———

_____

*  The Honorable Alan D. Lourie, Circuit Judge for the United States Court of Appeals
for the Federal Circuit, sitting by designation.

ALDISERT, Circuit Judge.

Thian Hok Ang and Untari Kusuma Dewi petition for review from a final order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of their applications for asylum, withholding of removal and relief under the Convention Against Torture ("CAT"). We have jurisdiction to review the BIA's order pursuant to 8 U.S.C. § 1252. We will deny the petition.

I.

The parties are familiar with the facts and proceedings before the BIA and the IJ, so we will only briefly revisit them here. Petitioners Ang and Dewi, who are both citizens and natives of Indonesia, contended that they would be subject to discrimination, threats and possible violence on account of their Chinese ethnicity and Buddhist religion were they to be returned to Indonesia.

II.

Because the BIA adopted "the findings of the IJ and discuss[ed] some of the bases for the IJ's decision," we will review the decisions of both the IJ and the BIA. He Chun Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). Whether a petitioner has demonstrated past persecution or a clear probability of future persecution are factual determinations subject only to the highly deferential substantial evidence standard. INS v. Elias-Zacarias, 502 U.S. 478, 483-484 (1992); Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). Under the substantial evidence standard, this Court will uphold the findings

2

of the BIA unless the evidence "not only supports a contrary conclusion, but compels it." Abdille v. Ashcroft, 242 F.3d 477, 483-484 (3d Cir. 2001).

III.

In their brief to this Court, Ang and Dewi waived any appeal of their applications for protection under CAT, and have not appealed the IJ's denial of their asylum applications as being untimely, a determination which in any event we lack jurisdiction to review. See 8 U.S.C. § 1158(a)(3); Tarrawally v. Ashcroft, 338 F.3d 180, 185-186 (3d Cir. 2003). We are therefore asked to review solely the IJ and BIA's rejections of their applications for withholding of removal.

An alien seeking withholding of removal must establish by a "clear probability" that his life or freedom would be threatened in his country of origin because of, *inter alia*, his race or religion. Chang v. INS, 119 F.3d 1055, 1059 (3d Cir. 1997). To meet this burden, the applicant must demonstrate that it is more likely than not that he will be persecuted upon his return, Senathirajah v. INS, 157 F.3d 210, 215 (3d Cir. 1998), which a petitioner can show by proving either past persecution or a likelihood of future persecution. See 8 C.F.R. § 1208.16(b). Indeed, even if petitioners fail to prove past persecution, which would have created a rebuttable presumption of future persecution, 8 C.F.R. § 208.16(b)(1)(i), petitioners can demonstrate a clear probability of future persecution by showing either that it's more likely than not that they would be singled out individually for persecution or that there is a "pattern or practice of persecution of a group

of persons similarly situated to the applicant on account of race [or] religion . . ..” 8 C.F.R. § 208.16(b)(2).

IV.

Our review of the record leads us to agree that substantial evidence supports the IJ’s determination that Ang and Dewi do not qualify for withholding of removal. First, we are satisfied that the incidents of which Ang and Dewi complain do not “rise to the level of persecution because the harm suffered was not sufficiently severe.” Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005) (holding that petitioner, a Chinese Indonesian, did not qualify for asylum relief, a less onerous standard than withholding of removal, when petition was based upon two isolated incidents of robbery by native Indonesians). The BIA and this Court have adopted a narrow definition of persecution, which “connotes extreme behavior, including ‘threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom.’” Ahmed v. Ashcroft, 341 F.3d 214, 217 (3d Cir. 2003) (quoting Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993)). “[P]ersecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional.” Fatin, 12 F.3d at 1240.

Here, there is no indication that either Ang or Dewi has suffered persecution. Neither testified that they were ever prevented from practicing Buddhism while they lived in Indonesia. Moreover, although Ang witnessed the riots in 1997 and 1998, and Dewi observed the 1998 riot, nothing happened to either one of them in those riots aside from

4

having a general fear of harm evoked within them.  Before the IJ, Ang himself acknowledged that nothing had ever personally happened to him in Indonesia and that he is just generally afraid for his safety should he be returned.  Similarly, there are no indications that Dewi has personally suffered any harm that rises to the level of persecution.  We agree with the IJ that the one incident she does introduce – her being accosted in a restaurant by four native Muslim Indonesians – was, as the IJ acknowledged, an instance of criminality, not persecution.  Accordingly, we conclude that neither has been the victim of past persecution.

We also conclude that Ang and Dewi have failed to show either that they will be individually targeted for persecution or that there is a pattern or practice of persecution of ethnic Chinese in Indonesia.  See 8 C.F.R. § 1208.16(b)(2).  The record contains no evidence that Ang and Dewi would face an individualized risk of persecution upon return to Indonesia.  To this end, although Ang and Dewi indicated that they have numerous close family members in Indonesia, they neither testified nor presented evidence indicating that these family members had been persecuted. See Hakeem v. INS, 273 F.3d 812, 816 (9th Cir. 2001) ("An applicant's claim of persecution is weakened, even undercut, when similarly-situated family members continue to live in the country without incident . . .") (cited by Lie, 396 F.3d at 537).  Consequently, "[i]n this case, there is little evidence that [Ang and Dewi] would face an individualized risk of persecution any more severe than that faced by [their] family members" who remain in Indonesia in apparent

5

well-being. Lie, 396 F.3d at 537.

Moreover, we do not agree with Ang and Dewi's contention that there is a pattern or practice of persecution of ethnic Chinese in Indonesia. Indeed, in Lie, in which we addressed the treatment of Chinese Christians in Indonesia rather than ethnic Chinese as a whole, we rejected a nearly identical argument. Therein, we considered similar citations to press accounts of riots, vandalism and robbery of Chinese Christians, but found that the situation for Chinese Christians had improved markedly since 1998, and that the cited incidents of violence did not "appear to be sufficiently widespread as to constitute a pattern or practice." Lie, 396 F.3d at 537. We indicated that this violence appears to have been "wrought by fellow citizens" and was not the result of "governmental action or acquiescence." Id. Here, notwithstanding their citation to various articles detailing the maltreatment of ethnic Chinese, Ang and Dewi have not presented any evidence that would compel us to break with Lie and conclude that there is a pattern or practice of persecution against Indonesians of Chinese ethnicity. Accordingly, we reject their argument that there is a clear probability that they would be the victims of future persecution upon return to Indonesia.

\* \* \* \* \*

We have considered all contentions presented by the parties and conclude that no further discussion is necessary. The petition for review will be denied.

6