**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

DEC 07 2009

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



|  |  |
|---|---|
| RICKY BELFAST NABABAN, | No. 08-71063 |
| Petitioner, | Agency No. A078-020-278 |
| v. | |
| ERIC H. HOLDER Jr., Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 5, 2009
Pasadena, California

Before: PREGERSON, BYBEE, and M. SMITH, Circuit Judges.

Ricky Belfast Nababan, a native and citizen of Indonesia, petitions for

review of the Board of Immigration Appeals's (BIA) order dismissing his appeal

from an immigration judge's (IJ) decision denying his application for asylum,

withholding of removal, and protection under the Convention Against Torture

(CAT). We have jurisdiction under 8 U.S.C. § 1252. We review legal conclusions

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

de novo and factual findings for substantial evidence. *Ochoa v. Gonzales*, 406 F.3d 1166, 1169 (9th Cir. 2005). We deny the petition for review.

The BIA did not apply the wrong legal standard or fail to properly address Nababan's asylum claim. The BIA acknowledged the IJ's conclusion that Nababan failed to demonstrate a well-founded fear of future persecution. After supplying its own analysis as to Nababan's grounds for asylum (i.e., race, religion, and social group), the BIA concluded there was "no reason to disturb" the IJ's denial of Nababan's application for asylum. Therefore, the BIA's opinion reflects that the BIA properly considered the issues raised by Nababan's asylum claim. *See Lopez v. Ashcroft*, 366 F.3d 799, 807 n.6 (9th Cir. 2004) ("[T]he [BIA] does not have to write an exegesis on every contention." (internal quotation marks omitted)).

Substantial evidence supports the IJ's and BIA's denial of asylum. Nababan did not allege that he suffered past persecution in Indonesia. Nababan failed to establish a well-founded fear of future persecution because even if he were a member of a disfavored group, he did not demonstrate the requisite individualized risk of persecution. *See Lolong v. Gonzales*, 484 F.3d 1173, 1179-81 (9th Cir. 2007) (en banc). In addition, Nababan has similarly-situated family members who remain in Indonesia unharmed. *See Hakeem v. INS*, 273 F.3d 812, 816-17 (9th Cir. 2001) ("An applicant's claim of persecution upon return is weakened, even

undercut, when similarly-situated family members continue to live in the country without incident . . . .").  Lastly, the record does not compel the conclusion that Nababan demonstrated a pattern or practice of persecution against ethnic Bataks, Christians, or Westernized individuals in Indonesia.  *See Wakkary v. Holder*, 558 F.3d 1049, 1060-62 (9th Cir. 2009); *see also Lolong*, 484 F.3d at 1180-81.

Because Nababan did not establish asylum eligibility, it necessarily follows that he did not satisfy the more stringent standard for withholding of removal.  *See Zehatye v. Gonzales*, 453 F.3d 1182, 1190 (9th Cir. 2006).  Substantial evidence also supports the denial of CAT relief because Nababan did not demonstrate that it is more likely than not that he would be tortured if returned to Indonesia.  *See Wakkary*, 558 F.3d at 1067-68.

**PETITION FOR REVIEW DENIED**.

*Pregerson, J., Dissenting. Nababan v. Holder,* **No. 08-71063**

I dissent. Nababan came to the United States at the age of fourteen. After spending his formative years in the U.S. and receiving a U.S. education, he is now being returned to a country where he will face hostility and persecution based on his westernization and religion. Thus, I cannot agree with this decision.

I agree with the majority that the BIA applied the correct legal standard for withholding of removal. I also agree that the BIA addressed Nababan's asylum claim. My dissent is based on four other errors committed by the BIA in this case.

First, I take issue with the BIA's conclusion that Nababan could avoid future persecution by relocating within Indonesia. This conclusion is not, as the majority contends, supported by substantial evidence. Instead, the record, including the State Department's 2005 Human Rights Country Report for Indonesia and the International Religious Freedom Report for Indonesia, shows that Christians experience discrimination and persecution throughout Indonesia. The BIA was inattentive to the record in this case. Thus, I would remand to the BIA for it to consider the entire record.  Smolniakova v. Gonzales, 422 F.3d 1037, 1045-46 (9th Cir. 2005) (remanding where the BIA affirmed the IJ's decision without opinion and the IJ had misconstrued the record).

Second, the BIA erred when it approved the IJ considering the presence of

-1-

Nababan's family members in Indonesia without harm. The BIA's determination that the IJ made no error in considering the presence of Nababan's family members in Indonesia is a legal conclusion.  Thus, this court reviews the BIA's determination de novo. Socop-Gonzalez v. INS, 272 F.3d 1176, 1187 (9th Cir. 2001).

The continued presence of family members in an asylum applicant's country of origin does not necessarily rebut an applicant's well-founded fear of persecution, unless there is evidence that those family members were similarly situated or subject to similar risk. See, e.g., Kumar v. Gonzales, 444 F.3d 1043, 1055 (9th Cir. 2006) (reversing the BIA's denial of asylum in part because the BIA had considered the continued safety of family members who were not similarly situated to the petitioner).

Nababan's extended family members, including his father's former wife, his half-brother, half-sister, grandmother, and several aunts and uncles, are not similarly situated,  They do not share the key characteristics Nababan asserts will subject him to persecution on account of his membership in a particular social group, including his formative years spent in the U.S. and his American education. As such, the BIA erred in finding that the IJ properly considered that Nababan's extended family members had not been harmed.  Moreover, even if Nababan's

family members were considered "similarly situated," the IJ and BIA failed to consider the persecution Nababan's uncle suffered on account of his Christianity, i.e., threats to kill him if he came back to worship at his Christian church.

Third, the BIA erred when it considered Nababan's particular social group as "[a]ll people who appear to be of American nationality." Nababan asserted that his social group was shaped by other specific factors such as his religion, his ethnicity, the young age at which he came to the U.S., and his U.S. education. Nababan's social group is not foreclosed by dicta in Toufighi v. Mukasey, 510 F.3d 1059, 1067 (9th Cir. 2007) (stating in dicta that "we have never recognized pro-Western as a social group protected against persecution. . . ."). I would remand for the BIA to properly consider Nababan's social group of Indonesian Christians who left Indonesia at a young age, spent their formative years in the U.S., received a U.S. education, and are 'Westernized' or would be perceived to be pro-American.

Finally, the BIA erred when it affirmed the IJ's denial of Nababan's claim for relief under the Convention Against Torture. The BIA's decision did not specifically discuss Nababan's CAT claim, but affirmed the IJ's denial of relief under CAT. The IJ concluded that Nababan had not shown that he would be tortured in the future or that such treatment would be with the consent or

acquiescence of the Indonesian government. Substantial evidence in the record shows the Indonesian government's ties to Muslim radical groups who target Christians and those they perceive to be associated with the West. I would remand for the BIA to consider whether Nababan has met his burden of establishing that it is more likely than not that he would be tortured.

Sadly, Nababan's lawyer before the IJ, Gary Linder, declined to qualify Nababan for voluntary departure, relief which the IJ indicated she was willing to grant. As such, the IJ denied this relief and Nababan will be unable to visit his father and step-mother here in the United States for at least the next five years. *See* Immigration and Nationality Act § 212(a)(9)(A)(i).